148 N.J. Super. 267 (1977)
372 A.2d 629
LORRAINE LAVENE, PLAINTIFF-APPELLANT-CROSS-RESPONDENT,
v.
BERNARD LAVENE, DEFENDANT-RESPONDENT CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 3, 1977.
Decided March 14, 1977.
*270 Before Judges FRITZ, ARD and PRESSLER.
Mr. Thomas T. Warshaw argued the cause for the appellant (Messrs. Drazin and Warshaw, attorneys) (Mr. G. Donald Haneke on the brief).
Mr. Stephen C. Carton argued the cause for the respondent-cross-appellant (Messrs. Carton, Nary, Witt & Arvanitis, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
In this matrimonial action a dual judgment of divorce was entered dissolving the marriage of *271 the parties, plaintiff Lorraine Lavene and defendant Bernard Lavene, on the grounds of defendant's cruelty and plaintiff's adultery. The judgment also awarded custody of the child of the marriage to defendant, allowed plaintiff alimony of $600 a month, provided for equitable distribution and denied an allowance of counsel fees to the wife. Plaintiff appeals from the custody award, the equitable distribution ordered and the counsel fee denial. Defendant cross-appeals from the alimony award, having withdrawn his cross-appeal from the divorce judgment entered in plaintiff's favor.
We have carefully scrutinized the transcript of the 11-day trial which resulted in this judgment. It is our conclusion that the lack of adequate findings by the trial judge with respect to the custody award requires a remand as to that issue, both for the making of further findings and for the presentation of additional proofs. We also remand with respect to various of the financial issues for the reasons herein stated.

* * *
What is particularly disturbing, however, about these proceedings and would itself require a remand, was the judge's failure to make any record notation of his private interview with the child. The record, indeed, does not even indicate that such an interview had taken place. We were advised that it had, but only as a result of our inquiry at oral argument.
N.J.S.A. 9:2-4 was amended, effective November 11, 1974, prior to the trial here, to require the trial judge to interview a child whose custody is in dispute and who is of "sufficient age and capacity to reason as to form an intelligent preference as to custody." The judge is also required to give "due weight to the child's preference." The child here was almost 8 1/2 at the time of the trial. While a child of that age would clearly lack the maturity and judgment to make a dispositive statement of custodial preference, nevertheless it is our view that her preference and the reasons therefor, if she wished to express them, ought to be a factor which the court should consider along with all of the *272 other relevant factors. The age of the child certainly affects the quantum of weight that his or her preference should be accorded, but unless the trial judge expressly finds as a result of its interview either that the child lacks capacity to form an intelligent preference or that the child does not wish to express a preference, the child should be afforded the opportunity to make her views known. We would think that any child of school age, absent the express findings we have indicated, should have that opportunity and that the judge would be assisted thereby.
The manner in which the interview is conducted and the persons present are matters which must be left to the trial judge's discretion. A private interview out of the presence of the contesting parents and their attorneys may well be indicated in order to assure the child's freedom of expression.[1] But the need for privacy does not constitute a warrant for total secrecy. The trial judge is clearly obliged to disclose for the record his findings as to the capacity of the child to express a preference. If he has concluded that the child has capacity, he must then state whether such an expression of preference was made. If the judge relies to any degree at all on the preference expressed, a matter which he must also state, then, of course, he must make known, at least in general terms, his reasons for such reliance and the extent thereof.
These are hardly novel principles despite the recent date of the amendment of N.J.S.A. 9:2-4. As stated in Callen v. Gill, 7 N.J. 312 (1951):
The authority of the judge to conduct a private examination of a child in order to discover its wishes as to custody is well established * * *, and the ages beneath which the child shall not be examined at all * * * and above which the examination shall be public are largely within the discretion of the court. But the object of a private *273 examination is to ascertain the predilection of the child, and that predilection, when ascertained shall be openly stated. It is a factor which will be considered by the trial court and an appellate court as well. * * * The preference of a young child has a place, although not a conclusive place * * *, in the determination, and the preference ascertained by the judge in private, if that be the procedure, should be stated openly as the end result of the examination. But no assertion of fact by the child should be permitted by the judge to influence his decision unless he makes the same known. Parties must have an opportunity to be heard upon the facts * * * else due process is not had, and a reviewing court must be put in possession of the proofs which lead to the decision, else it may do an injustice. [at 319]
The amendment of N.J.S.A. 9:2-4, therefore, simply codifies the common-law practice by requiring the trial judge to interview a child of sufficient capacity and, where capacity is not certain because of the child's age, to make a preliminary determination as to that question as well. The trial judge is not now and has never been privileged to ignore, vis-a-vis the record, the fact that an interview has taken place or to refrain from any expression at all of the impressions he has gained therefrom.
The judgment here was entered in June 1975, almost two years ago. Plaintiff's motion for a stay was denied, and Denise has been living with her father since that time. We were advised at oral argument that despite the provision in the judgment that the marital residence be sold and the proceeds divided between the parties, defendant, by agreement, has remained in the marital home with Denise, having paid plaintiff her share of anticipated proceeds. We were also advised that plaintiff has leased an apartment close by and that her visitation is regular and frequent and that its liberality has caused no problem for either the parties or the child. It is, of course, unfortunate that the determination of this appeal has taken so inordinately long, a fact due at least in part to the plaintiff's stay motions and the parties' lack of diligence in perfecting the appeal. Nevertheless, the intervening events and the life style of the child during this period of time are not without significance in terms of what may now be in her best interests. Cf. Sorentino v. Family & *274 Children's Soc. of Elizabeth, 72 N.J. 127 (1976). Surely, at least now that the child is almost 10 1/2 years old, her capacity to state a custodial preference has increased if, indeed, it is not a matter of certainty.
For the reasons we have herein expressed the custody issue must be reconsidered. Because of the length of time which has passed since the original judgment, the trial judge must not only make findings in respect of the original record but must also consider those findings in view of the child's and the parents' situations as they have developed since the original judgment. The parties shall have the opportunity to present whatever additional proofs covering that period of time they deem appropriate. A new probation investigation pursuant to R. 4:79-8 shall be conducted and the judge shall interview the child, following the principles we have heretofore set forth.
We address ourselves now to the financial issues. The primary complaint of plaintiff with respect to equitable distribution is that the court erred in finding that defendant's 43% interest in his electronics business did not constitute a distributable asset. We agree. The court reached its conclusion based on the testimony of defendant's accountant who offered the following facts. The corporation has a book value of $142,932.05. The books of the corporation attribute some $98,000 of this sum to "good will." Defendant, as president of the corporation, has personally guaranteed $22,000 worth of corporate notes. The trial judge deducted good will from total book value and, as we gather, assumed that defendant's interest was 43% of the balance remaining, a sum approximately equal to the amount of the loans he guaranteed. The judge thus concluded that the corporation interest had no value. We cannot, however, discern why the judge entirely discounted the corporate good will or why, since the corporate balance sheet included as obligations the loans defendant had personally guaranteed, it in effect deducted them twice. It is surely wholly unexceptional for the president of a small corporation to be required to personally *275 guarantee his company's loans, and there was no indication in this record that defendant would be called upon to meet that guarantee. We note, further, that defendant's income from this corporation was about $25,000 annually, in addition to what appear to be quite generous fringe benefits, including expenses of transportation, entertainment, travel and insurance. We are thus satisfied from our review of the record that the business interest is not without value. What its value is, what plaintiff's allocated share thereof should be, and the manner in which she should receive that share will have to be determined on the remand.
The obvious impact of the equitable distribution provision of the 1971 amendment of N.J.S.A. 2A:34-23 was to add to divorce actions a dimension of commercial litigation. Where there are marital assets the trial judge must determine which are distributable, what the value of the distributable assets is, and how, under all the circumstances, they are to be equitably distributed between the parties. Rothman v. Rothman, 65 N.J. 219 (1974); Painter v. Painter, 65 N.J. 196 (1974). There are probably few assets whose valuation imposes as difficult, intricate and sophisticated a task as interests in close corporations. They cannot be realistically evaluated by a simplistic approach which is based solely on book value, which fails to deal with the realities of the good will concept, which does not consider investment value of a business in terms of actual profit, and which does not deal with the question of discounting the value of a minority interest. See, generally, illustrative of the factors determinative of the value of stock interests in close corporations, Lawinger, "Appraising Closely-Held Stock  Valuation Methods and Concepts", 110 Trusts and Estates 816 (October 1971); Williams, "Valuation of Closely-Held Corporations," 110 Trusts and Estates 184 (January 1971); Banks, "Present Value and the Close Corporation," 49 Taxes the Tax Magazine 33 (January 1971); Kascle, "Valuation of Closely Held Corporations," 43 Taxes the Tax Magazine 454 (July 1965); Tierney, "A New Approach to the Valuation of Common *276 Stock of Closely Held Companies," Journal of Taxation 14 (July 1962).
The parties, of course, have the primary obligation of adducing those proofs which will enable the judge to make sound and rational valuations. As enjoined by Rothman v. Rothman, supra, 65 N.J. at 233, the parties must fully cooperate in the court's difficult valuation task and, where necessary, must secure the assistance of appropriate experts to appraise business interests. Plaintiff here did not obtain expert assistance, and that is at least partially the cause of the problem here. An accounting expert experienced in the type of business here involved should have been produced by her to test defendant's book value reliance and to assist the court in applying the accounting and valuation principles appropriate in evaluating the specific business interests here. The judge should not refrain from appointing his own expert as well, where the parties' proofs do not provide him with sufficient foundation and guidance. In this context we would not regard it as inappropriate, where circumstances warranted, for the judge to adapt the mechanism provided by the Corporation Act for the valuation of shareholders' interests by appointing an appraiser to make a nonbinding report to it of value. See N.J.S.A. 14A:11-8. In any event, counsel should advise the judge prior to the proceedings on the remand as to the additional proofs they plan to adduce on the question of the value of defendant's business interest on the date of the filing of the complaint and what, if any additional discovery is required. We point out that after the judge determines the value of defendant's interest in the corporation, he should then determine not only plaintiff's distributable share thereof but also the manner of her receipt of that share. The judge will, of course, be free to direct, if necessary to avoid impairment of the business itself, installment payments at such rate of interest and secured by such collateral as it deems appropriate.
The final problem we perceive in the judgment below is the court's denial of counsel fees. While an award of counsel *277 fees to the wife is discretionary, nevertheless, some reasonable award should be made if there is demonstration of the wife's need, the husband's ability and the wife's good faith in instituting the action. Williams v. Williams, 59 N.J. 229, 233 (1971). We would add that the equitable distribution issue is obviously one which the wife has a right to litigate and as to which counsel fees are awardable even if on a good faith test they might not be awardable as to the cause of action itself or as to any other issue involved in the litigation. See R. 4:42-9(a)(1), 4:75. The trial judge made no finding as to the wife's good faith, denying counsel fees on the ground that the parties' "financial conditions are relatively equal." In terms of assets, they are obviously not, however, and this because of the business valuation problem we have already dealt with. Aside from assets, however, defendant, as we have indicated, has a substantial income; plaintiff does not. That disparity alone would suggest some entitlement on her part to a fee allowance. We direct the trial judge to reconsider the issue of counsel fees and, whether or not he allows such fees, to support his determination with express findings as to respective needs and abilities. He should also consider, in determining whether plaintiff should be required to contribute to her own counsel fee, the amounts and liquidity of the parties' respective assets.
We have reviewed all of the other issues raised by the parties, including the trial judge's award of alimony, and find no error therein.[2]
*278 The provisions of the judgment appealed from relating to custody, counsel fees, and equitable distribution of the defendant's business interest are reversed, and we remand for further proceedings consistent with this opinion. In view of the compelling circumstances of the custody issue, these proceedings should be expedited. The remainder of the judgment is affirmed. We do not retain jurisdiction.
NOTES
[1] The most preferable procedure in that circumstance, but only if the judge determines that it is practicable under the circumstances, is to have the interview recorded by an inobtrusively placed reporter.
[2] Prior to oral argument defendant moved this court for an order suppressing plaintiff's appellate brief as being in violation of R. 2:6-2(d). It was defendant's position that the lengthy statement of facts in plaintiff's brief was unsupported by adequate transcript references and mischaracterized, if indeed did not misrepresent, the tenor of the trial testimony. We denied the motion, reserving, however, the right to impose sanctions in the event that our reading of the transcript in connection with our disposition of the appeal on the merits revealed material misrepresentations. Our review of the transcript does not persuade us that material misrepresentations were in fact made. Plaintiff's statement of facts is highly argumentative and perhaps unduly selective. We note, however, that there were many sharply contested factual issues here involved and that the transcript is almost 2,000 pages long. While we do not condone such "slanting" as appears in plaintiff's brief, we nevertheless appreciate that in such circumstances as are here involved some slanting of the trial testimony is inevitable. Nor do we regard the counterstatement of facts in defendant's brief as being free of the same technique. Having considered the briefs, the transcripts and all of the surrounding circumstances here, we have determined that sanctions are not appropriate.