**Joseph D. TYDINGS, Appellant,**

v.

**Terry H. TYDINGS, Appellee.**

**Nos. 87–1491, 87–1492.**

District of Columbia Court of Appeals.

Argued Sept. 26, 1989.
Decided Dec. 13, 1989.

Mark London, with whom Barbara S. Dougherty, Washington, D.C., was on the brief, for appellant.

Peter R. Sherman, with whom Mark S. Carlin, Washington, D.C., was on the brief, for appellee.

Before TERRY, SCHWELB, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

This is an appeal from two post-trial judgments entered following a decree of absolute divorce and attendant division of marital property. In the first, the trial court granted, in part, Mrs. Tydings' mo-tion for attorney's fees, expert witness fees and costs pursuant to D.C.Code § 16–911(a)(1) (1989). The second judg-ment granted Mrs. Tydings' motion for an accounting as to two distributions of in-come received after trial by Mr. Tydings from his ownership interest in a company known as Railroad Car Enterprises ("RCE"). The decree of divorce and distri-bution of marital property are not other-wise challenged.

The primary issue before us is whether the trial court had discretion to require Mr. Tydings to pay any portion of his spouse's attorney and witness fees given the fact that Mrs. Tydings became, in appellant's words, a "very wealthy woman" as a result of the marital property distribution. Alter-natively, appellant argues that the fee award was too high. We conclude that, although the award of attorney and expert witness fees was indeed high in comparison to awards reviewed in our prior reported decisions, the trial court did not abuse its discretion either in awarding fees or in the amount it ordered, given the complexity of the litigation and the respective financial abilities of the parties. We also reject ap-pellant's challenge to the two RCE distribu-tions.

I.

From the outset, it was apparent that the contested aspect of this divorce litigation involved solely the distribution of financial assets worth millions of dollars acquired by Mr. Tydings before and during the mar-riage. In two pretrial orders, the trial court ordered Mr. Tydings to pay a total of $50,000 toward attorney and accountant fees incurred by Mrs. Tydings in prepara-tion for trial. On the second occasion the court explained:

> It is apparent that some of the major issues in this case will involve tracing of hundreds of thousands of dollars and the valuation of numerous and complex prop-erty interests. Mrs. Tydings' need for exhaustive effort of high quality experts is equally apparent.

Following discovery and a trial that lasted four weeks, the trial court issued a 137–

page order dissolving the marital bonds and disposing of most of the large number of issues of property valuation and distribution, but reserving for a further hearing the issue of attorney's fees.[1] As a result of the property distribution, Mrs. Tydings received assets worth somewhat more than $1.5 million, while Mr. Tydings retained assets worth approximately $5 million.

Mrs. Tydings filed a post-judgment request for attorney's fees, expert witness and accountant fees, and costs totalling approximately $232,000, minus the $50,000 that had been awarded *pendente lite.* Following a hearing, the trial court issued a judgment setting forth and applying the criteria established by this court's past decisions for the award of fees. The court recognized that the award of fees is discretionary under D.C.Code § 16–911(a)(1), and that the inquiry in essence is twofold: whether to award any fees and to whom; and if so, in what amount. On the first question, the court considered the motivation and behavior of the litigants and any unnecessary burden which conduct by one party had imposed on the other. The court found that "neither party engaged in this litigation for an improper motive," but that the proceedings were "nevertheless burdensome and oppressive to the Wife," as "the Husband has taken positions during this litigation which the Court would characterize as 'inflexible'...." Turning to the amount of the award, the court considered each of the factors articulated in this court's decisions, *viz.,* the reasonableness of the fees sought by the wife, the quality and nature of the services performed by her attorneys, the necessity for those services, the results obtained, and the respective financial abilities of the parties. Significantly, the court found that Mr. Tydings.did not dispute the reasonableness of the amount requested by the wife or the quality and nature of the services performed in her behalf:

The Wife clearly needed the services of her counsel and her experts. The Husband was represented by two well-respected and excellent counsel. He had the services of his large law firm available to him without charge. The Wife required counsel of commensurate abilities to represent her. The voluminous records and documentation involved, the number and complexity of the assets, and the Husband's legal positions required somewhat extensive discovery; a trial that was complicated and lengthy; and expert witnesses' services and testimony.

The court also considered the respective abilities of the parties to bear the costs of litigation:

As between the parties, the Husband has a far greater ability to pay and contribute to the Wife's suit money than does the Wife. The Court has heard and considered the testimony of the Husband's counsel regarding the Husband's present financial circumstances and the dissolution of his law firm. The Court finds that the Husband's income has decreased substantially. Although the Wife will have significant income from spousal support and potential earnings from assets awarded to her, she will not have an amount close to that earned by the Husband from all sources, even at his decreased level. The Court estimates that her income from all sources will be approximately one-third that of the Husband's income from all sources. The Husband was awarded over seventy percent (70%) of the marital property and he, unlike the Wife, has substantial separate property.

The court therefore ordered appellant to pay Mrs. Tydings $154,872, or approximately two-thirds of the attorney's fees, expert witness fees and costs incurred in her defense, less a credit of $50,000 for the sums paid *pendente lite.*

---

1. We reject Mrs. Tydings' argument that Mr. Tydings, by later dismissing his appeal from the order of divorce and property distribution, is barred from challenging the award of attorney's fees and other suit money. The trial court's order of August 14, 1987, granting the divorce

and distributing most of the marital property, specifically reserved the issue of attorney's fees and costs until a further hearing. Mr. Tydings took a timely appeal from the court's December 2, 1987 order awarding attorney's fees and related expenses.

## II.

D.C.Code § 16–911(a)(1) provides in part that "[d]uring the pendency of an action for divorce ... the court may ... require the husband or wife to pay ... to the other spouse ... suit money, including counsel fees, to enable such other spouse to conduct the case...." As the trial court recognized, this court's decisions have established

> a two-step inquiry in cases in which a fee is awarded: first, whether to award a fee, and if so, to whom. Only when that preliminary decision has been made does the court further exercise its discretion in setting the amount.

*Steadman v. Steadman,* 514 A.2d 1196, 1201 (D.C.1986).

On appeal, appellant does not question the reasonableness of the expenses set forth by Mrs. Tydings in support of her post-trial request for fees and costs. Necessarily, he also does not dispute the reasonableness of the expenses reflected in the $154,872 awarded by the trial court, which reduced the requested amount by about one-third. Mr. Tydings also does not maintain that the trial court failed to take into account Mrs. Tydings' own financial ability in setting the specific amount of the award. Rather, his primary argument on appeal questions the legitimacy, under our statute, of any reimbursement for attorney or expert witness fees arrived at by *comparing* the respective financial abilities of the two spouses—at least when the requesting spouse's means have reached a certain level. Appellant points to the fact that, as a result of this litigation, Mrs. Tydings was made wealthy by any measure. He asserts that § 16–911(a)(1) is in derogation of the traditional American Rule requiring the parties to bear their own costs of litigation regardless of outcome,[2] and therefore a shift of counsel fees and other costs of suit is permissible only when a spouse otherwise is not strictly "able" to conduct the suit, or is considerably less able than Mrs. Tydings became as

a result of the divorce. As a corollary, appellant argues that a fee-shift is allowable under the statute only when the litigative conduct of the party ordered to pay fees constitutes "bad faith" or deliberately oppressive behavior, as that is the only relevant instance when the American Rule would permit a fee shift. *See Synanon Foundation, Inc. v. Bernstein,* 517 A.2d 28, 37 (D.C.1986). We are unpersuaded by these arguments.

### A.

Appellant's contention that only strict inability to pay, or at least a need far more pressing than Mrs. Tydings could demonstrate, suffices to permit a fee award under § 16–911(a)(1) is inconsistent with our prior decisions. In *Rachal v. Rachal,* 489 A.2d 476 (D.C.1985), we remanded an award of attorney's fees for further consideration because of concern that punitive considerations had influenced the trial court's calculation of the amount of fees to be awarded the wife. We explained that, while the conduct of the parties could properly play a part in the decision whether to award fees and to whom, ultimately, "[a]n award of attorney's fees should be based on the actual services performed by the attorney in question...." *Id.* at 478. We went on to explain that, in addition to attorney-related matters such as the quality of the services rendered and the difficulty of the case, the court in fashioning an award can properly take into account "the respective earning capacities of the parties." *Id.* We pointed specifically to the trial court's finding "that the husband's income was double that of the wife." *Id.* at 478 n. 3. Our opinion thus impliedly rejected the notion that a spouse's need for attorney's fees must be judged in isolation, without comparison to the other spouse's ability to pay. In *Steadman, supra,* we again noted that "the financial situations of the *parties*" is a proper consideration in deciding the amount of an award of attorney's fees. 514 A.2d at 1201 (emphasis added).

---

**2.** *See, e.g., Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

In interpreting § 16–911(a)(1), this court's decisions have repeatedly stressed the broad discretion it confers on the trial court to award attorney's fees. *E.g., Rachal, supra,* 489 A.2d at 478 (citation omitted) ("it would require an extremely strong showing to convince the court that an award is so arbitrary as to constitute an abuse of discretion"). That recognition reflects the essentially remedial nature of the statute, which, as a learned Superior Court judge has stated, is designed "to ensure that a party in a divorce action not be hindered unfairly in maintaining the action by *unequal burdens* between the spouses." *Norris v. Norris,* 110 Daily Wash.L.Rptr. 601, 605 (D.C.Super.Ct. March 19, 1982) (Block, J.) (emphasis added). Our decisions on fee awards have thus generally been content to identify the factors to be considered by the trial court, *e.g., Ritz v. Ritz,* 197 A.2d 155, 157 (D.C. 1964), and to assure that consideration was given to them. We have looked more critically at awards only where, as in *Rachal,* there was evidence that punitive factors—sounding in damages which the Family Division is not empowered to award—had influenced the size of the award. *See also Steadman, supra,* 514 A.2d at 1201. But there is no support in our decisions for the proposition that fees are *per se* impermissible, or subject to discount by some arbitrary formula, when the requesting spouse's independent means rise above a certain, indeterminate, level.

Appellant seeks support for his "strict construction" argument in former Chief Judge Reilly's concurring opinion in *Rachal,* in which he traced the history of § 16–911(a)(1) and concluded that "the words 'to enable her to conduct her case' [in the prior gender-oriented version of § 911(a)(1)] clearly implied that a husband should be charged only with such portion of the fee incurred by the wife as was needed to provide her with legal representation." 489 A.2d at 480–81. Based upon this understanding, Judge Reilly concluded that "the fact that the husband's income [in *Rachal*] was almost twice that of the wife was no reason for holding him liable for *all the fees* claimed by wife's counsel." *Id.* at 481 (emphasis added). Judge Reilly's concern, as he had indicated earlier, was that the statute not be read to allow judges "to charge the wife's *entire legal bill* to the husband in situations where the wife could afford a lawyer...." *Id.* at 480 (emphasis added). His opinion, therefore, is sound authority for a careful apportionment of attorney's fees depending on the respective financial abilities of the parties as one of several factors. It is not support for a rule denying fees to a spouse whose need for aid does not approach penury.[3]

### B.

There are, moreover, policy reasons why we must reject appellant's emphasis on the ability of Mrs. Tydings to meet her own litigative costs as a result of the property division. First, although in *Rachal* we held that the motivation of a spouse in pursuing (and compounding) divorce litigation should not influence the amount of a fee award, we acknowledged that this factor—and the resulting burdensomeness to the other party—can validly play a part in the threshold decision whether to award fees. *See also Steadman, supra,* 514 A.2d at 1200. To that extent, we recognized that § 16–911(a)(1) is designed to encourage voluntary settlement of divorce disputes and to discourage litigation as a means to force a settlement by attrition. That purpose, however, would be ill-served by a refusal to permit attorney's fees at all if a spouse subjected to harassing litigation were still fortunate enough to win a substantial prop-

---

3. Our decisions construing § 16–911(a)(1) as permitting consideration of the respective financial abilities of the parties are paralleled in Maryland by an express statutory requirement that the court consider "the financial status of each party" before awarding suit money and counsel fees. *See* Md.Fam.Law Code Ann. §§ 11–110, 12–103(b)(1) (1984). We note that

in *Rosenberg v. Rosenberg,* 64 Md.App. 487, 497 A.2d 485, 510 (1985), the court upheld as "reasonable and necessary" under Maryland's statute an award of attorney's fees and litigation costs totalling some $650,000 to a spouse who had received a monetary award of $1.75 million and yearly alimony of $275,000 in the divorce judgment.

erty division. As appellee observes with some logic:

> [A]bsent the possibility of an award of suit money, financial pressures might often coerce inequitable settlements or preclude trial preparation and effective litigation. The financially advantaged, controlling spouse may find litigation a profitable weapon. Faced with the prospect of an assessment of substantial suit money, however, the financially advantaged spouse may instead find settlement a more reasonable alternative.

There is another objection to the argument that attorney's fees were inappropriate because, viewed from the outcome of the litigation, Mrs. Tydings was a wealthy woman. Conceptually, if the modest size of the distribution received by the requesting spouse were the litmus test of whether fees could be awarded, the likelihood of that spouse's obtaining counsel and expert witnesses equal to the other spouse's would depend on the willingness of those specialists to await the result of the property division to be paid.[4] The arrangement would thus resemble a contingent fee. The Proposed Rules of Professional Conduct and Related Comments published by this court for comment on September 1, 1988, however, declare that such fees in domestic relations cases, though not prohibited, are "rarely justified." Comment 4A to proposed Rule 1.5. *See also* ABA PROPOSED MODEL RULES OF PROFESSIONAL CONDUCT (August 2, 1983), Rule 1.5(d)(1) (prohibiting *any* fee in domestic relations matters contingent upon amount of property settlement). Limiting the award of attorney's fees under § 16–911(a)(1) to cases where the property division is not sizeable would thus risk infecting the attorney-client relationship with fee considerations of a sort frowned upon in this area.

All told, then, we do not agree with appellant that the trial judge improperly looked to the fact that he "has a far greater ability to pay and contribute to the Wife's suit money than does the Wife." Neither our prior decisions nor sound policy prohibits equalizing the burden of litigation under § 16–911(a)(1) even when a party, in a strict sense, does not need assistance from the other side. The trial judge properly considered the relative abilities of the spouses to pay, and reduced the fees requested by Mrs. Tydings—the reasonableness of which is not questioned—by fully one-third in view of her acquired means. The court did not abuse its discretion.[5]

### III.

■ The assets that Mrs. Tydings received in the property division included one-half of Mr. Tydings' 36.75% interest in the

---

4. Appellant does not seriously argue that Mrs. Tydings could afford her substantial attorney's fees and costs independently of the judgment she received.

5. We also reject appellant's argument that before attorney's fees can be awarded against a spouse under § 16–911(a)(1), he must be found to have litigated in "bad faith." *Synanon Foundation, Inc. v. Bernstein, supra,* does not help appellant in this regard. That case involved a common law exception to the American Rule governing attorney's fees. 517 A.2d at 37. Section 16–911(a)(1), by contrast, is an affirmative statutory grant of authority to the trial court to award fees to enable a spouse to conduct litigation. Thus, while our decisions in *Rachal* and *Steadman* approved consideration of motivation and oppressiveness on the issue of whether fees should be awarded, neither case implied that this showing must amount to the bad faith required for a feeshift under the American Rule. Indeed, if we had intended in those cases to require evidence of aggravated misconduct amounting to bad faith, there would have been little point in our insisting that the decision of how much fees to award be kept clean of punitive or deterrent considerations; we would be asking too much of the trial court. In this case, the court found that Mr. Tydings had proceeded in good faith, but that some of his litigative positions had been inflexible and hence unnecessarily burdensome to the wife. No additional finding about the husband's conduct was necessary to advance the fee injury to the second, multi-factored decision of how large a fee to award.

Finally, there is no merit to appellant's claim that the judge considered his inflexible behavior in setting the amount of the award. The court's analysis focused entirely on the factors—reasonableness of the amount of fees requested, need for the services, results achieved, and the respective financial abilities of the parties—that we have held to be proper considerations.

RCE partnership,[6] an interest which the court valued at $563,103 on the date of the divorce by calculating the present value of its future stream of income, consisting of 40 estimated quarterly payments. Following the August 14, 1987 divorce decree, Mrs. Tydings filed a request on October 21, 1987 for an accounting of two RCE quarterly distributions, each in the approximate amount of $27,000, that had been made in July and October, 1987. She claimed that Mr. Tydings had (a) retained the former distribution entirely and (b) was asserting that she was entitled only to a pro rata share of the latter dating from August 14, 1987. Before the court could rule on the request for an accounting, Mr. Tydings noted an appeal from the August 14 judgment of divorce and property division.[7]

Appellant now argues that his appeal divested the trial court of subject matter jurisdiction over the July distribution and thus nullified its written order of December 2, 1987, awarding Mrs. Tydings 50% of that distribution. According to appellant, the August 14 judgment "fully considered RCE but did not grant the wife any interest in RCE distributions prior to August 14, 1987," and the court could not amend that judgment once an appeal from it had been noted.

Appellant's characterization of the August order is not correct. In her December 2 order the trial court explained that in fact she had not fully considered the RCE asset in the August 14 property division. The August 14 order did two things with respect to RCE: it left to Mr. Tydings all past distributions made by the time of trial, and awarded Mrs. Tydings a share of all distributions (over an estimated ten-year period discounted for present value) received from August 14 on. As the trial court pointed out, however, "[t]he July distribution constitutes an asset that was not in existence at the time of trial," and hence "distribution of that asset is an issue that has not been before the Court." In other words, the July distribution fell outside the terms and intent of the August 14 division of assets.[8] It was separate property which, because the court had previously been unaware of its existence, she retained jurisdiction to distribute under D.C.Code § 16–910(b) (1989). And by the same token, her authority to distribute it was not affected by the appeal from the August 14 judgment. *See Taylor v. First American Title Co.*, 509 A.2d 96, 97 (D.C.1986) (citation omitted) (trial court retains power to dispose of "matters which do not result in revocation or alteration of the judgment on appeal"); *DeFoe v. Weaver Bros.*, 108 A.2d 94, 95 (D.C.1954).

We likewise find no merit in appellant's argument that Mrs. Tydings was entitled only to a share of the October quarterly RCE distribution prorated from August 14, 1987, since that was the date she acquired her interest in RCE. As explained above, the trial court assigned a value to Mrs. Tydings' one-half interest in RCE as of August 14 by reference to an anticipated stream of quarterly distributions, including one in October 1987. It is irrelevant that that distribution reflected income from the RCE partnership that was earned daily (and hence a portion earned before August 14) but distributed quarterly. If Mrs. Tydings' share of the October payment were prorated, then the value of her interest in RCE determined as of August 14 would be diminished accordingly. The trial court intended no such result; on the contrary, as her December 2 order stated, the August 14 property division "requires an equal distribution of the October 1987 [RCE] distribution."

*Affirmed.*

SCHWELB, Associate Judge, concurring in the result as to Part II and concurring as to Part III:

With some hesitation, I concur in the result reached by my colleagues. I write

---

6. Railroad Car Enterprises (RCE) is a Maryland partnership that leases automobile racks to various railroad companies.

7. That appeal has since been dismissed voluntarily.

8. As the judge stated orally on November 23, 1987: "It was an asset that ... as far as the Court knew did not exist the day of trial"; "there's an asset out there of some $20,000 and change that I didn't distribute, that I didn't pick up on because it didn't exist at the time."

separately because I find the principal question presented to be a good deal more difficult than the majority opinion appears to suggest.

In determining whether Mrs. Tydings was properly awarded a counsel fee, we are confronted with a question of statutory construction. We might therefore do well to begin by focusing on the language of the statute. As we recently reiterated in *Parreco v. District of Columbia Rental Hous. Comm'n*, 567 A.2d 43, 45–46 (D.C.1989), the intent of the legislature is generally to be discerned from the language which it has used, and the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.

D.C.Code § 16–911(a) (1989), on which the award in this case was based, provides in pertinent part as follows:

> During the pendency of an action for divorce ..., the court may:
>
> (1) require the husband or wife to pay alimony to the other spouse for the maintenance of himself or herself and their minor children committed to such other spouse's care, and *suit money*, including counsel fees to *enable* such other spouse to conduct the case,....

I have italicized *suit money* and *enable*, because the proper interpretation of the statute appears to me to turn on what the drafters intended to convey by using these particular words in a sentence dealing with the maintenance of the requesting spouse and minor children.

I am aware of no District of Columbia precedent construing the phrase "suit money." In our neighboring jurisdiction of Maryland, however, the Court of Appeals has held that

[i]t is settled law in this state that in a divorce action the wife, when she is without independent means of her own, has the right to require her husband to defray the expenses incurred by her in the suit.....

The reasonable and necessary expenses or "suit money" to which a wife is entitled, is generally defined as the money necessary to enable her to carry on or defend a matrimonial action, that is, the necessary expenses relating to bringing and carrying on or defending the action.

*Rubin v. Rubin*, 233 Md. 118, 123–127, 195 A.2d 696, 699–700 (1963) (citation omitted); *see also McCurley v. McCurley*, 60 Md. 185, 188–89 (1883).[1] Similarly, in *Scanlon v. Scanlon*, 154 So.2d 899, 904 (Fla.Dist.Ct. App.1963), the court construed a Florida statute which provided for an award of suit money as rendering the husband liable for counsel fees "when two factors exist: (1) necessities of the wife and (2) the husband's ability to supply such necessities." The use of the words "necessary" and "necessities" surely imports the notion of need.

According to Webster's Third New International Dictionary (1966 ed.), cited by the majority, *enable* means

1a: to render able; give power strength or competency ...

1b: to make possible, practical or easy.

Other dictionaries contain other definitions, but I think it is fair to say that the primary meaning of the word is to make it possible for someone to do something; the idea of making that thing easy to do is secondary. As Chief Judge Reilly put it in his concurring opinion in *Rachal v. Rachal*, 489 A.2d 476, 481 (D.C.1985), in focusing on the word *enable*,

---

1. As the court stated in *In re Parnell's Estate*, 275 F.Supp. 609, 610 (D.D.C.1967):

   [S]ince the District of Columbia derives its common law from Maryland, decisions of the Court of Appeals of Maryland which have not been determined by the Court of Appeals for this Circuit are of great weight, and perhaps of greater weight than decisions of the courts of other states.

   The award of a counsel fee in the hundreds of thousands of dollars in *Rosenberg v. Rosenberg*,

64 Md.App. 487, 505, 497 A.2d 485, 510 (1985), cited by the majority at 9 n. 3, was made under a statute which, unlike D.C.Code § 16–911(a), separately authorizes both suit money and counsel fees. Md. Family Law Code Ann. §§ 11–110(a)(3)(1) and (11). I question whether the same result would be reached under a statute solely authorizing an award of suit money, including counsel fees, to *enable* a spouse to conduct her case.

at the time of [the] enactment of [the statute], Congress undoubtedly felt that wives without independent income or other resources were at a disadvantage in divorce proceedings unless provided enough financial assistance to enable them to retain a lawyer.... In short, the words "to enable her to conduct her case" clearly implied that a husband should be charged only with such portion of the fee incurred by the wife as was needed to provide her with legal representation.[2]

It is not easy for me to conclude that the award to Mrs. Tydings in this case qualifies as "suit money" or was necessary to "enable" her to maintain the action.[3]

Moreover, there are principles of statutory construction applicable to this case which merit some consideration. Under the "American" rule, absent bad faith or its equivalent, parties to litigation are ordinarily required to pay their own counsel fees. *Steadman v. Steadman,* 514 A.2d 1196, 1200 n. 4 (D.C.1986), citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). "No statute is to be construed as altering the common law, farther than its words import." *Shaw v. Railroad Co.,* 101 U.S. 557, 565, 25 L.Ed. 892 (1880). As Judge (later Chief Justice) Vinson said for the court in *Scharfeld v. Richardson,* 76 U.S.App.D.C. 378, 379, 133 F.2d 340, 341 (1942):

> The courts have consistently held legislation derogative of the common law accountable to an exactness of expression, and have not allowed the effects of such legislation to be extended beyond the necessary and unavoidable meaning of its terms. The presumption runs against such innovation.

**2.** In suggesting that Judge Reilly meant only that the husband should not be required to pay the wife's counsel fee in its entirety, my colleagues fail to consider a good deal of what he wrote.

**3.** I have no quarrel with the decisions of Judges Kennedy and Burgess awarding certain sums *pendente lite* so that Mrs. Tydings, whose resources were then quite limited, could litigate a

Is the construction of the words "suit money" and "enable" as supporting the award here at issue truly a "necessary" and "unavoidable" one? The point seems to me, at best, doubtful.

According to my colleagues, Mr. Tydings' contention that only a need far more pressing than Mrs. Tydings has demonstrated suffices to permit a fee award "is inconsistent with our prior decisions." They cite *Rachal* and *Steadman, supra.* I agree with them to the extent that the test articulated in these cases does not presuppose a showing of need. It is less clear to me, however, that our precedents *require* a decision in favor of Mrs. Tydings.

In *Rachal,* to be sure, the majority stated that, in assessing the propriety of an award of counsel fees, the trial court may properly consider the "respective earning capacities of the parties." 489 A.2d at 478. It made no allusion to any requirement that the requesting party demonstrate indigency or need. The principal issue in that case, however, was whether the court gave inappropriate consideration to the motivations of the parties. The majority opinion contains no discussion of the meaning of "suit money" or "enable," or of the question whether counsel fees may properly be awarded to wealthy litigants. In *Steadman,* the issues were likewise quite different from those in the present case. The court there reiterated much of what was said in *Rachal* about motivation, but likewise eschewed any discussion of the issue here presented, except to allude without comment to Judge Reilly's concurring opinion in *Rachal.* 514 A.2d at 1200 n. 4.

In neither of the cases relied on by the majority did the court come directly to grips with the contention which is here being so cogently presented by Mr. Tydings. As the Supreme Court stated in complex case. Judge Kennedy viewed the identical award as an "advancement" which the trial court could take into account after trial. Judge Huhn's decision, however, authorizes Mrs. Tydings to receive $104,872 over and above the $50,000 originally advanced to her, and she is to receive this sum at a time when the equitable distribution ordered by the court has assured that she is now a very wealthy woman.

*Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925),

> The most that can be said is that the point was in the cases if anyone had seen fit to raise it. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.

*See also Thompson v. United States,* 546 A.2d 414, 423 (D.C.1988). "It is well to remember that significance is given to broad and general statements of the law only by comparing the facts from which they arise with those facts to which they supposedly apply." *Kraft v. Kraft,* 155 A.2d 910, 913 (D.C.1959).[4] We take *Rachal* and *Steadman* to their limits and perhaps beyond when we insist that they compel us to sustain an award of more than $150,000 to a woman who has become a millionaire on the theory that it constitutes "suit money" which "enables" her to litigate her case.

Courts of other states which have addressed this issue have taken a variety of approaches; the result often turns on the phrasing of a particular statute. Some decisions require a greater showing of need than was made here. In *Blauner v. Blauner,* 60 A.D.2d 215, 218, 400 N.Y.S.2d 335, 337 (1st Dept.1977), *app. denied,* 44 N.Y.2d 648, 408 N.Y.S.2d 1023, 380 N.E.2d 336 (1978), the court stated that

> it should be emphasized that counsel fees are awarded in a matrimonial action in order to insure that an indigent wife has legal representation. If she is able to pay her own counsel, no award may be made.

*Accord Handwerger v. Handwerger,* 61 A.D.2d 966, 403 N.Y.S.2d 266 (1st Dept. 1978).[5] In *Bitner v. Bitner,* 228 Ind. 259, 263, 91 N.E.2d 169 (1950), the court made the limitation even more plain:

> It is also the law that in a divorce proceeding if the wife has either funds or credit sufficient for the purposes of her defense and her present support it is improper for the court to require the husband to furnish money for such purposes pending the litigation.

*Accord Becker v. Becker,* 141 Ind.App. 562, 568, 216 N.E.2d 849, 852 (1966); *see also Cooper v. Cooper,* 513 S.W.2d 229, 234 (Tex.Civ.App.1974) ("where both parties to a divorce action have substantial estates in their own right and in addition there is community property, there is ordinarily no justification for charging the wife's attorney's fees against the husband's estate"); *In re Marriage of Westcott,* 163 Ill.App.3d 168, 516 N.E.2d 566, 573 (1987) (counsel fees may be awarded only if one party has the ability to pay them and the other does not).

Other courts have taken a less restrictive approach, and have focused on the comparative financial positions of the spouses. As the court stated in *Peak v. Peak,* 411 So.2d 325, 328 (Fla.Dist.Ct.App.1982), for example,

> Where the parties to a dissolution proceeding are equally able to pay attorney's fees, it is an abuse of the court's discretion to require one spouse to pay the other's attorney's fees. *Cummings v. Cummings,* 330 So.2d 134 (Fla.1976). However, the purpose of section 61.16, Fla.Stat. (1979), permitting the trial court to award attorney's fees in a dissolution proceeding, is to insure that both parties will have the same opportunity to secure counsel. *Patterson v. Patterson,* 399 So.2d 73 (Fla. 5th DCA 1981). Where one spouse has a superior financial ability to secure counsel, it is not necessary

---

**4.** As the Supreme Court stated in *Armour & Co. v. Wantock,* 323 U.S. 126, 132–33, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944),

> It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the order under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court. General expressions transposed to other facts are often misleading.

**5.** *But see Borakove v. Borakove,* 116 A.D.2d 683, 684, 498 N.Y.S.2d 5, 6 (2d Dept.1986) ("the sufficiency of one spouse's financial means will not, standing alone, preclude an award of counsel fees").

that the other spouse be completely unable to pay attorney's fees.

*See also Weiman v. Weiman,* 188 Conn. 232, 236, 449 A.2d 151, 154 (1982) ("that a party has sufficient funds to pay the attorney does not preclude an award for counsel fees"); *Lavene v. Lavene,* 148 N.J.Super. 267, 277, 372 A.2d 629, 633–34 (1977) (disparity of assets and income suggests that wife was entitled to some counsel fees, since she had the right to litigate effectively the equitable distribution issue).

My colleagues rely on some rather persuasive reasons of policy to support affirmance here. *See supra,* pp. 9–11. I agree with that discussion in its entirety, and I especially share the majority's concern that the rule for which Mr. Tydings contends might result in arrangements resembling contingent fees, which should not be encouraged in domestic relations cases. I note, however, that legislatures, not courts, make policy. We are not authorized, as judges, to substitute our own notions of the public good for the views of our elected representatives. Although it is true of statutes, as of contracts, that when they are

> susceptible to two constructions—the one working injustice and the other consistent with the right of the case—that one should be favored which standeth with the right,

*Noonan v. Bradley,* 76 U.S. (9 Wall.) 394, 407, 19 L.Ed. 757 (1869), I think we can reach the point where we make such a choice only after a fair consideration of the statutory language persuades us that the "just" interpretation is a reasonable one. My colleagues have passed rather lightly over the question whether this necessary precondition has been met.

For the reasons described above, I am uncomfortable not so much with the result which this court has reached—it is probably a fair one—as with the route which it has taken to get there. The answer to the central question presented here is derived from cases which focused on other issues, and in which the language now deemed to govern the dispute before us was used

without anyone apparently having pressed the point here urged by Mr. Tydings. Although we might infer from the existence of Chief Judge Reilly's separate opinion in *Rachal* that his colleagues' failure to join it implied disagreement with it, the majority never really said so. The court's subsequent citation, in the footnote in *Steadman,* of Chief Judge Reilly's concurrence in *Rachal* may well have been an approving one; there is certainly nothing to suggest the contrary.

Nevertheless, there can be little doubt that, at least since *Rachal,* and probably earlier, *see Darling v. Darling,* 444 A.2d 20, 23 (D.C.1982) and authorities there cited, the courts in this jurisdiction have operated on the assumption that an award of the type here made by Judge Huhn is a permissible one. So far as I can discern, Mr. Tydings is the first litigant to challenge that assumption. Although this court has never squarely decided the issue, what it has said is more favorable to Mrs. Tydings' position than to that of her former husband. I think it most improbable, though not impossible, that this court would hold in favor of Mr. Tydings' position *en banc.* Accordingly, in spite of the misgivings which I have articulated, and in order to avoid conflict with assumptions justifiably based on prior opinions of this court, I am constrained to cast my vote in favor of affirmance.[6]

---

**6.** I readily join in part III of the majority opinion.