Katherine Foss McCLINTIC, Appellant,

v.

Howard McCLINTIC, Appellee.

No. 10–FM–933.

District of Columbia Court of Appeals.

Argued Dec. 1, 2011.
Decided March 22, 2012.

Christopher R. Pudelski, for appellant.

Anne Marie Jackson for, Washington, DC, appellee.

Before GLICKMAN and OBERLY, Associate Judges, and NEBEKER, Senior Judge.

OBERLY, Associate Judge:

Katherine Foss McClintic appeals from the trial court's order awarding attorney's fees and costs to her former husband, Howard McClintic, arising out of the couple's divorce litigation. Following a judgment of divorce and division of marital property, the trial court awarded Mr. McClintic $135,000 in legal fees and costs pursuant to D.C.Code § 16–911(a) (Supp. 2011). Mrs. McClintic challenges the trial

court's statutory authority to make the award, arguing that such fees were not required "to enable [Mr. McClintic] to conduct the case," as the statute specifies. The question before us is whether § 16–911(a) authorizes the court to award attorney's fees to a spouse absent a showing that "suit money" is needed to enable that spouse to litigate the divorce action on a level playing field with the other spouse. We hold that it does not. Because Mr. McClintic failed to make a showing that he needed "suit money," we reverse the trial court's order.

## I.

Katherine Foss McClintic and Howard McClintic were married in 1981. In the fall of 2006, after a twenty-five year marriage, the McClintics decided to separate. Initially hoping to avoid a litigious process, the McClintics began mediation proceedings in November 2006. One year later, in October 2007, after efforts to mediate failed, Mr. McClintic filed a complaint for dissolution of marriage. Like many actions for divorce, the subsequent proceedings were drawn out and contentious, involving numerous failed mediations and battles over discovery.

Unable to settle after more than a year, the parties proceeded to trial on March 2, 2009. The trial court ultimately issued a written judgment granting the divorce, dividing the marital property, and awarding the couple joint legal and physical custody of their three children. Soon after the court issued its order, both parties filed motions for attorney's fees, each arguing that the other had made the litigation burdensome and oppressive. The court postponed ruling on the motions and, in the months following entry of the divorce judgment, the McClintics fought over implementing the court's division of property. In February and March of 2010, both parties filed supplemental motions for attorney's fees.

In support of her motion, Mrs. McClintic argued that Mr. McClintic's "strategy throughout the case has been to vilify [Mrs. McClintic] and paint her in the worst possible light, while diverting attention from his own misconduct." According to Mrs. McClintic, she had repeatedly demonstrated her willingness "to negotiate and compromise rather than litigate," but Mr. McClintic refused to compromise, charging ahead with his "legal assaults." "In short," argued Mrs. McClintic, "[Mr. McClintic] has utilized his superior economic circumstances (having entered the marriage a wealthy man) to browbeat and harass his wife with unnecessary and unfair salvos of legal attacks."

Mr. McClintic's argument for legal fees centered on Mrs. McClintic's "tactics of delay and obfuscation" throughout the litigation. Contrary to Mrs. McClintic's claim that it was she who tried to compromise, Mr. McClintic accused his ex-wife of refusing to cooperate from the beginning—in mediation, in discovery, and in compliance with the divorce decree—causing Mr. McClintic to incur unnecessary legal fees.

The trial court denied Mrs. McClintic's motion and granted Mr. McClintic's, ordering Mrs. McClintic to contribute $135,000 to Mr. McClintic's attorney's fees and costs. In its order, the court cited D.C.Code § 16–911(a) as its authority to award fees in domestic relations litigation. The court summarized the purpose of the statute as enabling parties to litigate "issues of divorce ... without becoming public charges, especially where the resources of the parties are unequal." The court then relied exclusively on its finding that the parties, particularly Mrs. McClintic, had "pursued litigation with little restraint," and ruled that "[m]uch of the

legal work in concluding this divorce was made necessary or more extensive by [Mrs. McClintic's] delay and failure to comply with the decision without litigation." Without considering whether either party had shown a need for suit money, the court entered its ruling against Mrs. McClintic. She filed a motion for reconsideration. The trial court denied her motion and, in addition, ordered her to pay an additional $10,000 to Mr. McClintic for the subsequent litigation to resolve the property division caused by Mrs. McClintic's "intransigence."

## II.

█ In her appeal from the trial court's order, Mrs. McClintic argues that Mr. McClintic was wrongly awarded counsel fees under D.C.Code § 16–911(a), the statute governing relief during the pendency of a divorce action. She contends that the trial court awarded fees to Mr. McClintic contrary to the statute's express purpose to "enable such other spouse to conduct the case." We generally review "a trial court's decision to grant or deny a request for fees and costs" for abuse of discretion. *In re Estate of Green*, 896 A.2d 250, 252 (D.C.2006). However, "the issue of whether a trial court possesses the statutory authority to award particular fees and costs is reviewed *de novo*." *Id.* We therefore review *de novo* Mrs. McClintic's claim that the court erred as a matter of law in concluding that it was authorized under

§ 16–911(a) to award attorney's fees and costs to Mr. McClintic.[1]

## A.

█ The general rule in civil litigation is that parties bear their own costs of litigation regardless of outcome, unless there are "specific and explicit [statutory] provisions for the allowance of attorneys' fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *see also Delacruz v. Harris*, 780 A.2d 262, 264 (D.C. 2001). There are only a few recognized common law exceptions to this "American Rule." For example, under the common fund doctrine, a prevailing party who "preserves or recovers a fund or property for the benefit of others" may collect attorney's fees. *Peart v. District of Columbia Hous. Auth.*, 972 A.2d 810, 818 (D.C.2009) (internal quotation marks omitted). The common fund doctrine "operates to spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and the stranger beneficiaries do not receive those benefits at no cost to themselves." *Id.* (internal quotation marks omitted).

█ Another exception—the so-called bad faith exception—"permits an award of attorneys' fees against a party who has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons' connected to the litigation." *Synanon Found., Inc. v. Bern-*

1. Mr. McClintic argues that because Mrs. McClintic failed to challenge the court's statutory authority in her motions and oppositions below, the issue cannot be considered on appeal. "The principle that 'normally' an argument not raised in the trial court is waived on appeal is, however, one of discretion rather than jurisdiction," especially if the "issue is purely one of law." *District of Columbia v. Helen Dwight Reid Educ. Found.*, 766 A.2d 28, 34 n. 3 (D.C.2001). Moreover, even if a claim was not "pressed" below, that claim is properly reviewed on appeal if it has been "passed upon." *Id.* (citing *United States v. Williams*, 504 U.S. 36, 41, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992)). In this case, the trial court rested its decision to award fees on an interpretation of its statutory authority under § 16–911(a). Because the trial court "passed upon" the issue, we believe it appropriate to consider Mrs. McClintic's challenge to the trial court's statutory authority.

*stein,* 517 A.2d 28, 36 (D.C.1986) (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). Because "the bad faith exception is intended to punish those who have abused the judicial process and to deter those who would do so in the future," such fees are "proper only in the presence of extraordinary circumstances or when dominating reasons of fairness so demand." *Synanon Found.,* 517 A.2d at 37.

■ Neither the common fund nor the bad faith exception applies to this case. In awarding attorney's fees to Mr. McClintic, the trial court expressly relied on § 16–911(a). At issue is whether § 16–911(a) did in fact grant such authority to the trial court in light of Mr. McClintic's financial circumstances. Surprisingly, despite the statute's lengthy pedigree, *see* pp. 8–9, *infra,* our court has not squarely passed on the question whether § 16–911(a) requires a showing of financial need before it may be invoked as authority for the awarding of suit money in a divorce proceeding. The question before us, therefore, is one of statutory construction. Statutes in derogation of the common law, like § 16–911(a), should be strictly construed. *United States v. Texas,* 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993).

■ In interpreting § 16–911(a), our analysis "begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C. 1983) (en banc) (internal quotation marks omitted). We may also look appropriately "to dictionary definitions to determine the ordinary meaning of [the statutory] words"

if they are not otherwise defined in the statute. *Tippett v. Daly,* 10 A.3d 1123, 1127 (D.C.2010) (en banc).

■ D.C.Code § 16–911(a)(1) provides, in relevant part, that "[d]uring the pendency of an action for divorce, ... the court may ... require the spouse or domestic partner to pay suit money, including counsel fees, to enable such other spouse to conduct the case." As the statute is written, the purpose of paying suit money is "to enable such other spouse to conduct the case." We think the word *enable* is key. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 745 (2002 ed.) defines *enable* as "to render able"; "to make possible, practical, or easy." According to BLACK'S LAW DICTIONARY 606 (9th ed. 2009), *enable* means "to give power to do something; to make able." As Judge Schwelb aptly observed in an opinion reviewing an award of attorneys' fees under § 16–911(a), "the primary meaning of the word [enable] is to make it possible for someone to do something." *Tydings v. Tydings,* 567 A.2d 886, 893 (D.C.1989) (Schwelb, J., concurring). The plain meaning of § 16–911(a), then, is that if one spouse is financially able to "conduct the case," the other spouse should not be required to pay suit money.

■ Although we "need go no further" when "the plain meaning of the statutory language is unambiguous," it may nevertheless be "appropriate to look beyond even the plain and unambiguous language of a statute to understand the legislative intent." *1618 Twenty–First St. Tenants' Ass'n v. The Phillips Collection,* 829 A.2d 201, 203 (D.C.2003). The key language in § 16–911(a) originated in the Act of March 3, 1901, in which Congress authorized the District of Columbia courts to "require the husband to pay alimony to the wife for the maintenance of herself and their minor

children committed to her care, and suit money, including counsel fees, to enable her to conduct her case, whether she be plaintiff or defendant." An Act to Establish a Code of Law for the District of Columbia, Ch. 854, § 975, 31 Stat. 1346 (1901). As Chief Judge Reilly noted in *Rachal v. Rachal*, 489 A.2d 476 (D.C.1985), at the time the statute was enacted and before it was amended to incorporate gender-neutral language, "Congress undoubtedly felt that wives without independent income or other resources were at a disadvantage in divorce proceedings unless provided enough financial assistance to enable them to retain a lawyer.... In short, the words 'to enable her to conduct her case' clearly implied that a husband should be charged only with such portion of the fee incurred by the wife as was needed to provide her with legal representation." *Id.* at 480–81 (Reilly, C.J., concurring). The District of Columbia Council eventually amended the statute to "plac[e] the sexes on an even footing," *id.* at 481, but the statute retained the key language "to enable such other spouse to conduct the case." *See* COUNCIL OF D.C., COMM. ON THE JUDICIARY AND CRIM. LAW, REPORT ON BILL NO. 1–36, "ANTI-SEX DISCRIMINATORY LANGUAGE ACT," at 12 (May 20, 1976) ("Section 14 amends D.C.Code § 16–911 ... [by] creat[ing] equality between the spouses and allow[ing] the court to require either spouse to pay ... litigation costs ... in any such pending action according to the individual circumstances and needs of the parties.").

In prior cases, we have recognized—consistent with our reading of the statute here—that § 16–911 "is designed to ensure that a party in a divorce action not be hindered unfairly in maintaining the action by *unequal burdens* between the spouses." *Tydings*, 567 A.2d at 890 (internal quotation marks omitted). Suit money, we have noted, is meant to equalize the burdens between the spouses; otherwise, a party armed with superior economic resources may favor "litigation as a means to force a settlement by attrition." *Id.* A look at our neighboring jurisdiction, Maryland, provides additional support ·for interpreting § 16–911 as requiring payment of suit money only when necessary to enable a spouse to litigate on equal ground.[2] In *Rubin v. Rubin*, 233 Md. 118, 195 A.2d 696, 700 (1963), the Maryland Court of Appeals defined "suit money" as the "money necessary to enable [the wife] to carry on or defend a matrimonial action, that is, the necessary expenses relating to bringing and carrying on or defending the action." *See also* MD.CODE ANN., FAM. LAW § 7–107(a), (b) (LexisNexis 2006) (defining the "reasonable and necessary expense of prosecuting or defending the proceeding" as "suit money; counsel fees; and costs").

We hold that before a court may exercise its discretion to award suit money under § 16–911(a), the spouse requesting fees must make an initial showing that suit money is necessary to enable that spouse to "carry on or defend" the divorce action. We do not hold that the spouse seeking suit money must be penniless to receive an award. *See Tydings*, 567 A.2d at 891 ("Neither our prior decisions nor sound public policy prohibits equalizing the burdens of litigation under § 16–911(a)(1) even when a party, in a strict sense, does not need assistance from the other side."). Similarly, a threshold showing of need,

---

**2.** " '[S]ince the District of Columbia derives its common law from Maryland, decisions of the Court of Appeals of Maryland on questions that have not been determined by the Court of Appeals for this Circuit are of great weight.' " *Tydings*, 567 A.2d at 893 n. 1 (Schwelb, J., concurring) (quoting *In re Estate of Parnell*, 275 F.Supp. 609, 610 (D.D.C. 1967)).

although mandatory to trigger application of the statute, will not necessarily result in a fee award. It may be, for example, that a spouse demonstrates a need for suit money but the current financial circumstances of the opposing spouse make a fee award impracticable. In the case before us, however, neither party submitted any documentation to support a threshold claim of need, and thus the trial court should have denied both parties' motions without regard to other factors, such as the litigation excesses that either party may have caused. *See* Part II.B., *infra.*

Notwithstanding the plain language of the statute, however, Mr. McClintic contends that *Tydings* forecloses any argument that a party requesting fees must make a showing of financial need "to pass Go." In *Tydings,* argues Mr. McClintic, we held that a court may consider the "respective financial abilities of the parties as *one of several factors* " in deciding whether to award fees and to whom. *Tydings,* 567 A.2d at 890 (emphasis added). In so holding, however, *Tydings* did not address the question before us here, to wit, whether the spouse requesting fees had made a threshold showing that suit money was necessary to maintain the litigation. The "narrow issue" presented to the *Tydings* court was "whether the trial court had discretion to require Mr. Tydings to pay any portion of his spouse's attorney and witness fees given the fact that Mrs. Tydings became, in appellant's words, a 'very wealthy woman' as a result of the marital property division." *Id.* at 887. In other words, the issue presented in *Tydings* was whether a court, in making the decision to

award fees, could consider the financial circumstances of a spouse *after* the outcome of the divorce proceeding. We rejected the "emphasis on the ability ... to meet [one's] own litigative costs as a result of the property division." *Id.* at 890. And for good reason. As we acknowledged in *Tydings,* the purpose of the statute to avoid forcing "settlement by attrition ... would be ill-served by a refusal to permit attorney's fees at all if a spouse subjected to harassing litigation were still fortunate enough to win a substantial property division." *Id.* at 890–91.[3] In refusing to assess financial need based on the outcome of the litigation, the court in *Tydings* in no way held that the spouse seeking fees need not make at least some showing of inequality of litigation resources before an award would be proper.

### B.

 In the award at issue in this case, the trial court, correctly, we think, referenced the purpose of the statute as enabling parties to "litigate issues of divorce and, by implication, property division, without becoming public charges, especially where the resources of the parties are unequal." With no inquiry into Mr. McClintic's financial circumstances, however, the trial court justified its award solely on the fact that Mrs. McClintic's failure to cooperate caused unnecessary legal expenses and delays. Although a spouse's failure to cooperate—and whether that spouse made litigation "burdensome and oppressive"—may be considered in determining whether to award fees, such a consideration may be made only after a finding that the party requesting fees needs

3. The court in *Tydings* also observed that an arrangement in which a spouse's financial situation was reviewed based on the outcome of the litigation would "resemble a contingent fee" because the ability to obtain counsel or expert witnesses to match the other spouse "would depend on the willingness of those

specialists to await the result of the property division to be paid." *Id.* at 891. Neither in *Tydings* nor in this case, however, were contingent fee arrangements employed by the spouse seeking suit money, and thus *Tydings'* concern on this score does not apply to the present case.

suit money to carry on the divorce litigation. Mr. McClintic made no attempt to show a financial need for suit money. Such a showing would have been difficult, for the record demonstrates that Mr. McClintic had more than sufficient financial ability to maintain the divorce action and was thus able to "conduct the case" without suit money. Mr. McClintic earned a very comfortable annual income at the start of the divorce litigation in 2007, and owned substantial assets in an investment account that the court treated as his separate property.[4]

Because we conclude that the trial court lacked statutory authority to award fees to Mr. McClintic, we need not address Mrs. McClintic's additional claims that the court's award was improperly based in part on conduct that occurred after the divorce became final and that the trial court abused its discretion in determining whether to award fees and how much to award. We also reject Mrs. McClintic's request that we award her the suit money she requested because, like Mr. McClintic, she made no attempt to show that she needed suit money to "conduct the case."[5]

The judgment of the trial court is, accordingly,

*Reversed.*

---

4. Conceivably, the allegations in Mr. McClintic's motion might have warranted an award of fees under the bad faith exception to the American Rule. We express no opinion on that question, however, because whether Mrs. McClintic's conduct could be characterized as "vexatious" or "wanton" was never determined by the trial court. Mr. McClintic did not request fees under the bad faith exception, and the trial court did not base its award on bad faith.

5. We recognize that the economic resources of the parties were not equal. Aside from a few years of work, Mrs. McClintic spent the twenty-five year marriage as the (unpaid) "manager of household affairs," while Mr. McClintic "received significant income from his salary and investments." The record demonstrates, however, that Mrs. McClintic did have resources to carry on the divorce litigation. For their fifteenth wedding anniversary, Mr. McClintic gave Mrs. McClintic a very substantial sum of money, which she used to set up her own investment account.