**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0325-19

A.R.P.,

    Plaintiff-Respondent,

v.

R.C.T.,

    Defendant-Appellant.

              Submitted January 19, 2021 – Decided March 10, 2021

              Before Judges Sabatino, Currier and DeAlmeida.

              On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FD-13-0741-04.

              Buchan & Palo LLC, attorneys for appellant (Stephanie Palo, on the briefs).

              Pavliv & Rihacek, LLC, attorneys for respondent (John Thaddeus Rihacek, of counsel and on the brief).

PER CURIAM

Defendant, father, appeals from the August 7, 2019 order granting plaintiff's motion to relocate to Florida with their daughter S.P-T., Susan.[1]

Susan was born in June 2003. She lived with plaintiff – her mother – and her maternal grandmother in Florida until October 2010. At that time, defendant was awarded full custody of Susan because of her chronic absences from school and lack of medical and dental care while in plaintiff's custody.

Shortly thereafter, defendant and Susan moved to New Jersey to live with defendant's mother. Plaintiff followed within several months. In October 2012, the parties agreed under a consent order for plaintiff to attend therapy and a substance abuse evaluation as a precondition to beginning family therapy with Susan and defendant. Plaintiff gradually obtained increased parenting time and responsibility through various court orders, culminating in a July 2016 order in which defendant continued to serve as Susan's parent of primary residence, plaintiff became her parent of alternate residence, and the parties shared joint legal custody.

In May 2018, Susan told police that defendant had inappropriately touched her. Thereafter, she went to live with plaintiff in a nearby town in New Jersey.

---

[1]  We use initials and a pseudonym to protect the minor's privacy. R. 1:38-3(d)(10).

A-0325-19

Plaintiff was granted temporary residential custody of Susan in January 2019. Defendant was charged with third-degree aggravated criminal sexual contact and second-degree endangering the welfare of a child. A no-contact order prevented defendant from seeing or having any contact with Susan. The criminal charges remained unresolved at the time of the relocation hearing.

In June 2019, plaintiff filed a motion requesting permission to move with Susan to their prior location in Florida. On July 31, 2019, the parties appeared pro se before the Family Part.

Plaintiff explained that the primary reason she wished to relocate to Florida with Susan was because "[t]hat's where all [her] family [was]." Plaintiff represented she had a job lined up at Goodwill and that she expected to attend school to train as a phlebotomist in Florida. Plaintiff told the judge that she and Susan were residing in a home owned by her brother in New Jersey and he planned on selling the home in the near future. Plaintiff stated that once in Florida, she and Susan would live with plaintiff's mother in her home.

The judge asked plaintiff why it was in Susan's best interest to move since she was entering her junior year in high school and the move would require her to attend a new school. Plaintiff replied that the presence of her family, Susan's

desire to attend college in Florida, and Susan's preference to relocate to Florida to be away from her father demonstrated the move was in Susan's best interest.

The judge also inquired how relocation would affect Susan's therapy, which at the time entailed weekly sessions with a therapist. Plaintiff said she had "found a place already[,]" and represented that the therapist said the "move would be best for us." Although plaintiff had letters from the therapists, the letters did not contain the proffered statement. Plaintiff did not produce any evidence comparing the Florida high school to Susan's present school.

When the Family Part judge returned to the courtroom after a break, he noted the case was "complex." He also advised he wanted to interview Susan, then sixteen years old. The judge adjourned the case until August 7, 2019 and informed the parties they should return with relevant documentary evidence and witnesses. He also told the parties they could provide questions for him to ask Susan during the interview.

The parties reconvened on August 7, 2019. Plaintiff did not provide any proof of employment in Florida and advised she had not made any inquiries about the school Susan would attend.

Plaintiff presented her mother, Carol, as a witness. Carol said she owned a two-bedroom home in Florida and plaintiff and Susan could live with her. She

A-0325-19

reiterated plaintiff's reasons when asked why it was in Susan's best interests to relocate to Florida.

The judge then questioned defendant regarding his opposition to the move. Defendant said he was concerned about plaintiff's ability to adequately care for Susan as she had failed to provide appropriate care when she was the custodial parent. Defendant also stated the relocation would affect Susan's relationship with him and his mother.

In preparing to interview Susan, the judge asked the parties if they had any questions for her. Defendant provided a list of questions and plaintiff indicated she was "fine with . . . whatever you talk about." After the interview, the judge summarized its contents for the parties. The bottom line was that Susan expressed her desire to move to Florida to be with additional family. She said some of her friends and her paternal grandmother did not believe the allegations Susan had made against her father and it was hard to have a relationship anymore with them under those circumstances.

In an oral decision issued on August 7, 2019, the Family Part judge stated that Bisbing v. Bisbing[2] and N.J.S.A. 9:2-4(c) governed his determination. The judge then analyzed each of the fourteen statutory factors under N.J.S.A. 9:2-

---

[2]  230 N.J. 309, 338 (2017).

4(c). He found that the majority of the factors either weighed in favor of relocation or were neutral, with only one factor weighing against relocation. Therefore, the court concluded plaintiff had met her required burden by a preponderance of the credible evidence and granted her motion to relocate with Susan to Florida.

The judge made the following findings regarding the factors. As to factor one—the parents' ability to agree, communicate, and cooperate in matters relating to the child—the court found it was neutral because the parties did not "communicate when they [were] in Monmouth County, and they're probably not going to communicate any better where there's distance between them."

Factor two—the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse—weighed in favor of relocation because given defendant's no-contact order, the judge found there was "no other option in terms of residential custody now between these two parties."

Factor three—the interaction and relationship of the child with his or her parents and siblings—weighed in favor of relocation because of the no-contact order and Susan's statements that she did not wish to see defendant even if his charges or the no-contact order were dismissed.

The court found factor four—the history of domestic violence, if any—was inapplicable because there was no testimony of any history between the parties.

Factor five—the safety of the child and the safety of either parent from physical abuse by the other parent—weighed in favor of relocation. The judge found the no-contact order "create[d] some level of risk for physical abuse from [defendant][;]" while plaintiff's prior failings when Susan was in her custody were "view[ed] as largely water under the bridge" since there was no evidence that plaintiff put Susan at risk while caring for her in New Jersey.

In assessing factor six—the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision, the judge stated it weighed "strongly" in favor of relocation and he gave it "significant weight" because Susan "made clear" her desire to relocate to Florida. The judge deemed this the "most important factor in the analysis."

Factor seven—the needs of the child—weighed "ever so slightly" in favor of relocation, the judge stated, because although "[n]othing was really brought up in terms of special needs[,]" there was greater financial and familial support available to Susan in Florida.

A-0325-19

The court found factor eight—the stability of the home environment offered—was neutral because while the home environment in Florida might provide greater stability, it was counterbalanced by Susan's need to adapt to a new school, new therapists, and new friends.

Factor nine—the quality and continuity of the child's education—weighed "ever[] so slightly" against relocation because neither party presented sufficient evidence to permit the judge to ascertain whether Susan would receive a better or worse education in Florida.

Factor ten—the fitness of the parents—was neutral because there was insufficient evidence showing either parent was unfit since plaintiff's alleged misconduct occurred nearly ten years ago and defendant was only charged with offenses and not convicted.

Factor eleven—the geographical proximity of the parents' homes—was neutral because while typically this factor would weigh strongly against such a relocation, the judge found the no-contact order negated this factor given that defendant was prevented from communicating with or seeing Susan.

Factor twelve—the extent and quality of the time spent with the child prior to or subsequent to the separation—was neutral because Susan had spent significant portions of her life living with each parent.

A-0325-19

Factor thirteen—the parents' employment responsibilities—was neutral because neither party presented any evidence that either was prevented from caring for Susan because of work responsibilities.

Factor fourteen—the age and number of the children—was neutral because Susan did not have any siblings. The court noted there were family members residing in both Florida and New Jersey.

After concluding that more factors weighed in favor of relocation, the judge then performed a qualitative analysis. He stated:

> And primarily what moves the [c]ourt here is the order that there can't be any contact right now, August 7, 2019. What happens on September 2, September 3, I can't predict. And the preference of this [sixteen]-year-old girl who I found to be mature, I found her to be credible, I found her to be articulate. And she made her desires known both in terms of her interaction with her father and where she would like to live.
>
> And that's really what moves me. I thought long and hard about whether making this decision today or waiting until September 3 to see what, if anything, . . . Judge Oxley does on the application.[3] But fundamentally the child should have some level of stability and direction in terms of where the child will be attending school, recognizing that these analyses are done in the best interest of the child.

---

[3] Defendant represented during the hearing that he had a motion to dismiss the criminal charges pending before Judge Oxley.

9

And if the [c]ourt were to wait even until September 3 the [c]ourt would still be left with a situation where now, even if the no-contact order is lifted the child would not have had any contact with [defendant] for at that point approximately [seventeen] months.

And based on the child's very affirmative declaration of not wanting that relationship, be left in a very similar boat, and again the preference of the child would largely control when we're talking about a [sixteen]-year-old high school junior here, in terms of this analysis.

And even if there is a dismissal of the criminal charges it would be a substantial non[-]temporary change in circumstance which would require further litigation and probably bring us to a point further in the school year that would just require further uncertainty for this child who I think common sense would dictate needs some certainty in her life.

As stated, the court granted plaintiff's motion to relocate with Susan to Florida.

On appeal, defendant seeks the reversal of the order granting plaintiff's motion to relocate. He argues that the court erred in finding relocation was in Susan's best interest, that he was deprived of due process during the hearing, and that the court gave undue weight to the no-contact order in its determination.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We will not disturb the "factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably

credible evidence as to offend the interests of justice." <u>Rova Farms Resort, Inc. v. Investors Ins. Co.</u>, 65 N.J. 474, 484 (1974).

Substantial deference is owed to the Family Part's findings of fact because of its special expertise in family matters. <u>Cesare</u>, 154 N.J. at 413. Deference is especially appropriate when the evidence is "largely testimonial and involves questions of credibility." <u>Id.</u> at 412. A trial judge who observes witnesses and listens to their testimony is in the best position to "make first-hand credibility judgments about the witnesses who appear on the stand." <u>N.J. Div. of Youth & Family Servs. v. E.P.</u>, 196 N.J. 88, 104 (2008). Thus, this court does not "weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." <u>Mountain Hill, LLC v. Twp. of Middletown</u>, 399 N.J. Super. 486, 498 (App. Div. 2008).

Defendant contends that, although the trial court applied the correct standard and relied upon the requisite statutory factors, the decision to grant plaintiff's motion to relocate was an abuse of discretion. He asserts that plaintiff failed to meet her burden of proof because she did not "successfully submit a single document into evidence" and instead relied upon "unsubstantiated hearsay." Defendant claims the inadequate hearing "left far more questions than answers" regarding: (1) where Susan would live; (2) where she would attend

school and the quality of the school; (3) whether there would be adequate therapy resources available; and (4) plaintiff's employment.

Under N.J.S.A. 9:2-2, a parent who seeks to remove a child from this state when the other parent does not consent must demonstrate "cause" for the removal. The legislative intent of this statute was "to preserve the rights of the noncustodial parent and the child to maintain and develop their familial relationship." Bisbing, 230 N.J. at 323 (quoting Holder v. Polanski, 111 N.J. 344, 350 (1988)).

In Bisbing, the Court interpreted "cause" under N.J.S.A. 9:2-2 as requiring the petitioning parent to satisfy the best interests analysis set forth in N.J.S.A. 9:2-4(c), "supplemented by other factors as appropriate." 230 N.J. at 338 (citing N.J.S.A. 9:2-4(c)). In making "the sensitive determination of cause[, a court] must weigh the custodial parent's interest in freedom of movement as qualified by his or her custodial obligation, the State's interest in protecting the best interests of the child, and the competing interests of the noncustodial parent." Id. at 323 (internal citation omitted).

Here, the trial judge appropriately applied the Bisbing standard and relied on the factors enumerated in N.J.S.A. 9:2-4(c) in deciding the motion. He concluded factors two, three, five, six, and seven weighed in favor of relocation.

The judge gave "significant weight" to factor six—the preference of the child—and stated it was the "most important factor in the analysis." This determination followed from his interview of Susan and his assessment that she possessed "sufficient age, sufficient maturity, [and] sufficient capacity" and was "credible . . . [and] articulate."

Our courts have long recognized that the preference of a child of sufficient age and maturity is entitled to consideration in rendering custody decisions. See Lavene v. Lavene, 148 N.J. Super. 267, 272 (App. Div. 1977) (holding courts should afford children the opportunity to express their custodial preference and noting the "age of the child certainly affects the quantum of weight that his or her preference should be accorded"). Given that Susan was sixteen at the time of the hearing, it was not error for the judge to give her clearly stated preference to relocate significant weight in his decision.

The judge also considered the no-contact order in place against defendant. This order resulted from the aggravated criminal sexual contact and endangering the welfare of a child charges defendant faced because of Susan's allegations. While defendant had not been convicted at the time of the hearing, the judge correctly noted the no-contact order "create[d] some level of risk for physical abuse from dad." Accordingly, it was properly considered as an "other factor[]"

13

supplementing the enumerated factors in N.J.S.A. 9:2-4(c). <u>Bisbing</u>, 230 N.J. at 338.

Under his analysis, the judge only found factor nine—the quality and continuity of the child's education—weighed "ever[] so slightly" against the move. This was because neither party presented sufficient evidence to permit the judge to determine whether the quality of Susan's education in Florida would be superior or inferior to her current school. Although the record lacked this information, it was just one factor in a qualitative analysis that requires consideration of a myriad of factors. We similarly discern no error in the judge's findings regarding plaintiff's living arrangements and employment in Florida or the availability of therapy resources for Susan.

Therefore, it was not a mistaken exercise of discretion for the court to conclude that relocation was in Susan's best interest after its consideration of the relevant factors in N.J.S.A. 9:2–4(c) and "other factors as appropriate." <u>Ibid.</u>

We briefly address and reject defendant's argument that the trial court erred by failing to "ensure that sufficient judicial resources were expended on this complex matter and that procedural due process was preserved." Defendant contends the court erred by permitting the parties to submit unauthenticated

documents into evidence, allowing plaintiff to introduce hearsay testimony,[4] and prohibiting the parties from engaging in discovery.

Family Part judges are given broad discretion in managing their dockets in accordance with the circumstances of each individual case. Major v. Maguire, 224 N.J. 1, 24 (2016) (citations omitted). Such discretion reflects the recognition of the Family Part's special expertise in resolving family matters. E.P., 196 N.J. at 104.

When a party fails to bring a trial error to the trial judge's attention, we review for plain error. State v. Chavies, 345 N.J. Super. 254, 265 (App. Div. 2001). Reversal is warranted on such grounds only where the party shows the error was "clearly capable of producing an unjust result[,]" R. 2:10-2, and was "sufficient to raise a reasonable doubt" as to whether the error led the court to a result it otherwise might not have reached. State v. Macon, 57 N.J. 325, 336 (1971).

Here, the parties appeared before the court on the scheduled hearing date. The judge began to hear testimony. Defendant did not object to the testimony

---

[4]  Defendant refers to the following statements as inadmissible hearsay or otherwise impermissibly admitted: (1) plaintiff's claim that Susan's therapists thought "the move would be best for us"; (2) plaintiff's claim that her brother planned to sell the house in which she and Susan resided; and (3) plaintiff's claim that she had a job waiting for her in Florida.

A-0325-19

or the commencing of the proceedings. Defendant did not request discovery or the opportunity to obtain counsel. After a recess, the court adjourned the hearing and instructed the parties on how the case would proceed. The court informed the parties that the hearing would resume on August 7 and the parties should come to court that day with documentary evidence and any witnesses whose testimony they wished to present.

When the parties reconvened on August 7, they were accorded exactly that promised opportunity – to provide their own testimony, present witnesses and cross-examine any witnesses presented by the opposing party, and to present documentary evidence. There was no objection to the proposed procedure or at any time during the August 7 hearing.

In considering defendant's specific assertions of error, the statements he delineates were not impermissible or consequential hearsay. Plaintiff told the court where she intended to live and to work, clearly information within her personal knowledge. See N.J.R.E. 602. Although the alleged statement of the therapists was hearsay, it was not mentioned by the judge in his fact-finding nor did he rely upon it in making his decision. Defendant cannot demonstrate plain error.

A-0325-19

We also are not persuaded that the court gave "undue weight" to the no-contact order. As we have stated, the court properly performed a best-interest-of-the-child analysis and considered "all relevant factors set forth in N.J.S.A. 9:2-4(c), supplemented by other factors as appropriate." Bisbing, 230 N.J. at 309. The no-contact order was appropriately considered as a factor in the determination whether relocation was in Susan's best interests.

Because the Family Part judge applied the correct legal standard and statutory factors and his decision is supported by adequate, substantial, and credible evidence in the record, we can see no reason to disturb it.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17