**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2513-23

S.D.S.,[1]

    Plaintiff-Appellant,

v.

M.H.,

    Defendant-Respondent.

_____

Argued February 26, 2025 – Decided April 3, 2025

Before Judges Mayer and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Salem County, Docket No. FD-17-0223-23.

David T. Garnes argued the cause for appellant.

John Nachlinger argued the cause for respondent (Netsquire, attorneys; John Nachlinger, on the brief).

PER CURIAM

---

[1] The parties and minor children are referred to by their initials and pseudonyms to protect their privacy in accordance with Rule 1:38-3(d)(10).

Plaintiff S.D.S. (Sharyn), the paternal grandmother of defendant M.H.'s (Melissa) minor children, appeals from the March 6, 2024 Family Part order granting Melissa's motion to modify custody and relocate the children to Texas, and denying Sharyn's cross-motion to grant her sole physical custody of the children, limit Melissa's parenting time to supervised visitation in New Jersey, and require Melissa to submit to a mental health evaluation and engage in anger management treatment. We affirm.

We write primarily for the parties, who are familiar with the underlying facts and procedural history. Melissa is the biological mother of two children, A.S. (Aaron) and A.S. (Anthony), who were eight and ten years old, respectively, at the time of the motion. Both children were born before Melissa was twenty-one years old, when she was living with Sharyn in New York. Melissa moved to Texas in September 2016, where she currently resides with her fiancé and their two children. Sharyn's son, the children's father, is incarcerated.

Throughout their young lives, the children have resided for periods of time alternately with Sharyn in New York and with Melissa in Texas, at times by informal agreement and at times by consent order. Sharyn and Melissa consistently agreed that when the children primarily resided with one of them,

the other had liberal parenting time during school recesses and the summer. Most recently, Melissa granted Sharyn and her husband M.S. (Michael) temporary guardianship of the children in a November 2020 consent order, which provided Melissa parenting time during school recesses and the summer.

In September 2022, Sharyn and Michael moved with the children from New York to New Jersey, where Sharyn subsequently registered the custody order. Contrary to the terms of the custody order, Sharyn did not inform Melissa in writing that she was moving nor did she provide Melissa her new address, although Sharyn testified she was unaware of this obligation. Sharyn's move to New Jersey reduced Melissa's parenting time because the children's recess schedule and school calendar changed.

Although the parties discussed permanently allowing the children to move to Texas commencing with the 2024-25 school year, they were unable to reach an agreement. On August 11, 2023, Melissa moved to modify the November 2020 consent order to relocate the children to Texas, with liberal visitation to Sharyn. Sharyn cross-moved to grant her sole physical custody of the children, for Melissa's visitation to be supervised and occur only in New Jersey, and to require Melissa to undergo a mental health evaluation and engage in anger management treatment.

A-2513-23

The Family Part judge scheduled a plenary hearing to resolve the motions. Before the plenary hearing, the Family Part judge conducted in camera interviews of Aaron and Anthony pursuant to Rule 5:8-6. Prior to doing so, she explained to the parties her procedure for conducting child interviews:

> Now counsel know[s] that the parties have a right to see the record. But . . . I always give [the children] an opportunity to tell me if . . . there's something they want to tell me that they don't want either party to know because they're afraid that the parties are going to be upset or their feelings are going to be hurt. I tell the children that I will not release that portion of the record if . . . they tell me something that they don't want the parties to know, just because they're going to hurt someone's feelings.
>
> I do that because—the whole purpose of me speaking to the children is so that they will tell me the truth of how they really feel. If they know they can tell me something in confidence they're more likely to tell me the truth. . . . [B]ut if they know . . . someone else is listening or someone else is going to get a copy of the transcript they might not tell me the truth. So that's the reason I say that. And that's the reason I will follow through on that. . . . [U]ntil the Appellate Division tells me I can't do that, I think that is the right way to proceed.

The judge conferenced with the parties after the interviews. She advised that at the end of Anthony's interview, she asked him if there was anything he said that he did not want the judge to share with the parties, and Anthony said "everything." He told the judge he did not want her to share anything he

4

disclosed to her because he was "afraid of hurting someone's feelings." The

judge continued:

> So I told him I would not disclose his preference. But
> he did give a very clear preference that I will take into
> consideration as one of many factors that I'll consider
> at the time the matter returns to me for a decision.
>
> So I'm trying to think of something that I can tell
> you about—without betraying that promise that I made.
> I'll just say generally he . . . seemed very happy, well
> adjusted. He answered all of my questions easily. I did
> not get the impression that he was influenced by
> anyone. He denied that either . . . party tried to
> influence anything that he said. That's what I can tell
> you about [Anthony].

She advised Aaron's interview was shorter and he was "not quite as

mature" as his brother.

> [T]here was one thing he told me that he didn't want me
> to disclose, but it wasn't his preference, so I'm going to
> tell you what his preference was. Bottom line is he
> would like things to stay the same. So he wants to live
> primarily with his grandmother . . . but still see his mom
> as he does now.
>
> . . . .
>
> When I asked him, again, if he could make the
> decision—I did tell both kids that it's not their decision
> but if they could make the decision I asked them to tell
> me what they would decide, and [Aaron] . . . wasn't
> very clear. I can't say he was adamant, saying [he]
> definitely want[ed] things to stay the same. He really
> did not respond that way. But ultimately, you know,

5

> when I gave him the choice, do you want to spend more time with your mom, less time with your mom, things to stay the same. When I gave him those options he said he wants things to stay the same. When I asked him if he wanted to spend more time with his brother and sister at [his] mom's house, he said that he wants his brother and sister to come here.

Following a three-day plenary hearing during which both parties[2] testified, the judge issued her detailed findings in a forty-page oral decision. As a threshold matter, the judge found Sharyn was a psychological parent to the children because they lived with her "on and off their entire lives," and during this time "[Sharyn] has overseen their educational progression and their medical needs." The judge also found "evidence of a parent/child bond between [Sharyn] and the children," as shown "in how [Sharyn] came across in her testimony," as well as the children's in camera interviews. Because Sharyn was a psychological parent to the children, she stood on equal footing with Melissa in terms of the children's custody.

The judge then found there was a change in circumstances since the November 2020 consent order, finding "no dispute" in that regard:

> I find that the relocation of [Sharyn] from New York to New Jersey caused a change in circumstances in that it affected the parenting time that [Melissa] could enjoy

---

[2] Michael had notice of the hearing but declined to participate.

with the children because it changed the children's school schedule.

> Further, there's evidence in the form of simply the children getting older. I find that . . . the time that has passed since the 2020 order, although it's only been about a little over three years, three years in the life of children this age is significant and they . . . have changed in that time and so . . . I find that under all those circumstances, a change in circumstances has been shown . . . .

Next, the judge addressed each of the best interests factors set forth in N.J.S.A. 9:2-4. After consideration of these factors, the judge granted Melissa's motion to modify custody and relocate the children to Texas, and denied Sharyn's motion for sole physical custody, supervised visitation, a mental health evaluation and anger management treatment.

A March 6, 2024 order memorialized the judge's oral decision:

> [Melissa] and [Sharyn] shall share joint legal custody. Effective July 1, 2024, [Melissa] shall be the parent of primary residence with permission to relocate the children to Texas and [Sharyn] shall be the parent of alternate residence. The parties shall equally share the cost of the transportation to send the children to Texas. Parenting time for [Sharyn] and [the children's father] shall be open and liberal as agreed between the parties. Between now and July 1, 2024, [Melissa] shall have open and liberal parenting time as agreed between the parties and to include video and telephonic communication with the children. Both parties shall abide by the Children's Bill of Rights and assist the children in making a positive transition to Texas.

On appeal, Sharyn raises the following points for our consideration:

POINT I
THE TRIAL COURT ERRED IN MISAPPLYING THE CUSTODY FACTORS SET FORTH IN N.J.S.A. 9:2-4 (Not Raised Below)

POINT II
THE TRIAL COURT ERRED IN DENYING [SHARYN]'S REQUEST FOR [MELISSA] TO SUBMIT TO A MENTAL HEALTH EVALUATION AND COMPLETE ANGER MANAGEMENT TREATMENT (Not Raised Below)

POINT III
THE TRIAL COURT ERRED IN FINDING THAT THERE WAS A CHANGE IN CIRCUMSTANCE[S] THAT WARRANTED A MODIFICATION OF THE PARTIES' NOVEMBER 2020 CUSTODY ORDER (Not Raised Below)

POINT IV
THE TRIAL COURT ERRED IN FINDING [MELISSA] TO BE A CREDIBLE WITNESS (Not Raised Below)

POINT V
THE TRIAL COURT ERRED IN NOT DISCLOSING THE CUSTODY PREFERENCE OF ONE OF THE MINOR CHILDREN, AND THE TRIAL COURT ERRED IN ITS FINDINGS REGARDING THE CUSTODY PREFERENCE OF THE OTHER MINOR CHILD (Not Raised Below)

POINT VI
THE TRIAL COURT ERRED IN FINDING THAT [SHARYN] INFLUENCED THE INFO[RM]ATION PROVIDED BY ONE OF THE MINOR CHILDREN

DURING THEIR IN[]CAMERA REVIEW (Not Raised Below)

POINT VII
THE TRIAL COURT ERRED IN FINDING THAT THE MINOR CHILDREN'S RELOCATION TO THE STATE OF TEXAS WITH [MELISSA] WOULD NOT BE DESTAB[I]LIZING (Not Raised Below)

POINT VIII
THE TRIAL COURT ERRED IN FINDING THAT [SHARYN] CAN APPLY AS A GRANDPARENT FOR "GRANDPARENT TIME" (Not Raised Below)

POINT IX
THE TRIAL COURT ERRED IN IMPROPERLY CONSIDERING THE FACT THAT [MELISSA] IS THE BIOLOGICAL MOTHER OF THE MINOR CHILDREN IN LIGHT OF THE TRIAL COURT'S FINDING THAT [SHARYN] IS A PSYCHOLOGICAL PARENT (Not Raised Below)

Our scope of review of Family Part orders is narrow. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters," Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413), and we will not overturn the Family Part's findings of fact when they are "supported by adequate, substantial, credible evidence," Cesare, 154 N.J. at 412. A reviewing court will also not disturb the Family Part's factual findings and legal conclusions that flow from them unless they are "so manifestly

unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015)). We review a Family Part's legal determinations de novo. Id. at 565.

As a threshold matter, the entirety of Sharyn's arguments are raised for the first time on appeal. We ordinarily "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

In addition, we note Sharyn failed to adequately brief points two, four, seven, eight and nine. We will not consider an issue not briefed beyond the "conclusionary statement of the brief writer." Miller v. Reis, 189 N.J. Super. 437, 441 (App. Div. 1983); see Heyert v. Taddese, 431 N.J. Super. 388, 437 (App. Div. 2013) (declining to consider on appeal a claim for which the party "set forth no argument" aside from a "bare assertion"); Nextel of N.Y., Inc. v. Englewood Cliffs Bd. of Adjustment, 361 N.J. Super. 22, 45 (App. Div. 2003)

("Where an issue is based on mere conclusory statements by the brief writer, we will not consider it.").

Having reviewed the record in light of our standard of review, we discern no abuse of discretion in the judge's credibility determinations and findings of fact, and we are satisfied the judge's decision was based on substantial credible evidence in the record. Given the importance of child custody determinations, we consider the following limited issues notwithstanding Sharyn's failure to raise the issues before the Family Part judge.

Addressing Sharyn's point two, a moving party seeking to alter a custody arrangement must show there has been a change in circumstances and that it is in the child's best interests to modify such arrangement. Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). In evaluating whether circumstances changed, the court must consider the circumstances that existed at the time the parties entered into the current custody order. Sheehan v. Sheehan, 51 N.J. Super. 276, 287-88 (App. Div. 1958). After considering those facts, the court can then "ascertain what motivated the original judgment and determine whether there has been any change in circumstances." Id. at 288.

As with a trial judge's findings of fact, we afford deference to the determination of whether a party has established a change in circumstances,

reviewing such determinations for an abuse of discretion. Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015). "But not any change in circumstance will suffice; rather, the changed circumstances must be such 'as would warrant relief' from the provisions involved." Slawinski v. Nicholas, 448 N.J. Super. 25, 35 (App. Div. 2016) (quoting Lepis v. Lepis, 83 N.J. 139, 157 (1980)).

The November 2020 custody order gave Melissa parenting time during the children's Christmas recess in even-numbered years and during their winter recess every year, in addition to other school breaks, and during summer recess from July 5 to the second-to-last week of summer. When the children moved to New Jersey, they no longer had separate Christmas and winter recesses as they did in New York, and their summer recess did not span the same time as in New York. Thus, Sharyn's relocation from New York to New Jersey was a change in circumstances because the move reduced Melissa's parenting time with the children. The judge also found the change in the children's age, particularly at their respective ages, was significant. We discern no abuse of discretion in these findings.

Sharyn also contends the judge erred in applying the child custody factors enumerated in N.J.S.A. 9:2-4 because her findings are unsupported by the factual record established at the hearing. We disagree.

A motion to relocate a child must be decided under a best interests analysis pursuant to Bisbing v. Bisbing, 230 N.J. 309, 313 (2017). In making a best interests custody determination, the court shall consider, but is not limited to, the following factors enumerated in N.J.S.A. 9:2-4:

> the parents'[3] ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

The record reflects the judge considered each of the statutory factors, ascribed appropriate weight to each, and articulated facts in the record supporting her findings. We are unpersuaded by Sharyn's challenge to the judge's factfinding and weighing of the applicable factors, which largely amount

---

[3] For purposes of the court's analysis, the judge considered the factors as applicable to Sharyn and Melissa as parents.

to mere disagreement with the trial court's decision. Because "matters of credibility are within the domain of the fact finder rather than a reviewing court, we may not fairly interfere with such determinations made by a trial judge in evaluating the weight of the evidence in a bench trial." Rieder Cmtys. v. Twp. of N. Brunswick, 227 N.J. Super. 214, 224 (App. Div. 1988).

Lastly, we address Sharyn's contention the judge erred in not disclosing Anthony's custodial preference. Pursuant to Rule 5:8-6, if a Family Part judge decides to conduct an in camera interview with a child as part of a custody hearing, "[a] stenographic or recorded record shall be made of each interview in its entirety," and "[t]ranscripts thereof shall be provided to counsel and the parties upon request and payment for the cost."

We provided guidance on child interviews in Laverne v. Laverne:

> The manner in which the interview is conducted and the persons present are matters which must be left to the trial judge's discretion. A private interview out of the presence of the contesting parents and their attorneys may well be indicated in order to assure the child's freedom of expression. But the need for privacy does not constitute a warrant for total secrecy. The trial judge is clearly obliged to disclose for the record his findings as to the capacity of the child to express a preference. If [the judge] has concluded that the child has capacity, [the judge] must then state whether such an expression of preference was made. If the judge relies to any degree at all on the preference expressed, a matter which [the judge] must also state, then, of

14

course, [the judge] must make known, at least in general terms, [the] reasons for such reliance and the extent thereof.

[148 N.J. Super. 267, 272 (App. Div. 1977) (footnote omitted).]

Both "as a means of insuring the litigants' due process rights and as a means of obtaining relevant evidence" a litigant has the "right to know of the child's in camera statements to the judge, 'at least in general terms,' . . . when there is pending a custody dispute as to which such information has relevance." Uherek v. Sathe, 391 N.J. Super. 164, 168 (App. Div. 2007) (citation omitted) (quoting Laverne, 148 N.J. Super. at 272).

Here, Sharyn did not object to the judge's method of conducting the interviews, including her views on respecting the children's request for non-disclosure. The judge advised the parties of Aaron's preference for custody to remain the same, the extent to which she considered his input and the reasons for that determination:

> [Aaron] is eight years of age. Again, I don't think an eight-year-old, in most cases, is able to determine what is in his best interests. I think that he is eight years old. He lives with his grandmother now and he likes his grandmother's house. He has a good relationship with his grandmother, so being . . . eight years old, it's reasonable for him to want things to stay the same.

15

So I've considered what he has said and . . . to the extent that is it different from what I decided is because I . . . had determined other factors to be more significant.

With regard to Anthony, the judge explained:

I am not disclosing what [Anthony] ultimately stated, but I will say that I have considered his request in my determination. I also state that . . . children at ten years old don't always know what's in their best interests. They certainly can have an opinion, and I've considered his opinion. Nothing in . . . [Anthony's] statements to me causes the court any concern for his safety if he were to be relocated to Texas with [Melissa] except for the concerns that I have just already addressed, that . . . ha[ve] been raised in the case and . . . need[] to be monitored by [Melissa].

We acknowledge the judge stated she would not release a portion of the interview transcript based on Anthony's request for confidence and, although she explained the extent to which she considered his input, she did not ultimately disclose Anthony's preference for custody. While this procedure falls short of the protections engrafted in the court rule, Sharyn consented to the judge's manner of conducting the interview and her consideration of Anthony's confidential input. Because Sharyn did not request a copy of the interview transcript under Rule 5:8-6, there is no order on appeal regarding the transcripts. Thus, the judge's non-disclosure of Anthony's stated preference does not mandate our reversal of the decision because the issue was waived before the

16

trial court and we "will not render advisory opinions or function in the abstract." Indep. Realty Co. v. Twp. of N. Bergen, 376 N.J. Super. 295, 301 (App. Div. 2005).

To the extent we have not expressly addressed any issues raised by Sharyn, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division